**Richard D. HOLIHAN, Plaintiff–Appellant,**

v.

**LUCKY STORES, INC., Defendant–Appellee.**

**No. 95–55409.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1996.

Decided June 26, 1996.

---

Charles Don Crawford, DeAnna S. Keith, Law Offices of Crawford & Keith, Newport Beach, California, Ronald J. Richard, Karyn H. Bucur, Newport Beach, California, for appellant.

Kenneth D. Sulzer, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, California, for appellee.

Before FLOYD R. GIBSON,* JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Richard D. Holihan appeals the district court's summary judgment in favor of Lucky Stores, Inc. (Lucky), in Holihan's action for employment discrimination in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The district court held that Lucky was entitled to summary judgment because Holihan was not disabled within the meaning of the ADA.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse. We hold that there is a genuine issue of material fact as to whether Holihan had a disability within the meaning of section 12102(2)(C) of the ADA, which defines "disability" to include "being regarded as having" a substantially limiting impairment.

---

* Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

## I

Holihan began working for Lucky's chain of supermarkets in 1966 and became a store manager in 1976. Between 1976 and 1992, he managed eight different stores without any significant problems. Indeed, Holihan was very successful at Lucky, even being named the company's all-time profit producer. Between April and July 1992, however, he was the subject of numerous employee complaints. Among other things, these complaints charged him with hostility and abusiveness, including manhandling, berating and threatening employees.

As a result of these complaints, Lucky District Manager Mark Church and Grocery Supervisor Gary Donne held a meeting with Holihan on July 30, 1992. Church asked Holihan to explain the rash of incidents and inquired if there were any "problems" he was having that Lucky could help him with. Holihan denied the complaints against him and denied having any problems. Church and Donne decided to transfer Holihan to another store with no history of personnel problems.

Over the next three months, Church received 51 separate complaints from 13 different employees about Holihan's abusive behavior at the new, previously complaint-free, store. These complaints alleged that Holihan, among other things, threw food off of shelves and ordered employees to clean it up, repeatedly threatened to fire the entire staff for no valid reason, and violated money handling and other office procedures.

On October 22, 1992, Church and Lucky South Division Operations Vice President Jim Horsley met with Holihan to discuss these allegations. Holihan denied some and claimed the others were exaggerated. At the conclusion of the meeting, Church offered Holihan a choice of either suspension pending Lucky's investigation into the allegations, or a standard leave of absence if Holihan contacted Lucky's Employee Assistance Program (EAP) for counseling.[1]

On October 26, 1992, Holihan contacted the EAP and began a medical leave of absence. The EAP referred Holihan to Dr. Jonathan Strickler, a psychologist, who diagnosed Holihan as "experiencing stress related problems precipitated by work" and recommended he not return to Lucky until February 1, 1993. This diagnosis was forwarded to Lucky.

In January 1993, Lucky's insurance carrier sent Holihan to Dr. Robert McDaniel in connection with a worker's compensation claim filed by Holihan. McDaniel diagnosed Holihan as suffering from "Organic Mental Syndrome, Not Otherwise Specified." According to this diagnosis, Holihan was experiencing a "dementing" illness which rendered him "partially psychiatrically disabled from his job." This diagnosis was sent to Lucky's insurance carrier, but not to Lucky.

Holihan did not return to work on February 1, 1993. Instead he requested an extension of his leave until March 1993 on the ground that he was still disabled. Lucky granted this request.

In March 1993, Holihan requested another extension of his leave, supporting this request with a "Claimant's Certification" prepared by Dr. Charles Cramer, who treated Holihan in connection with his worker's compensation claim. The certification stated that Holihan was suffering from "depression and anxiety," and recommended against Holihan returning to work before April 30, 1993. Lucky granted the extension.

In March 1993, while still on leave from Lucky, Holihan began pursuing two other business activities. In March and April 1993, he prepared to open a sign-making business, finding suppliers and training himself in sign and banner production. He also obtained a real estate license and began selling real estate, attending sales meetings, holding open houses, and showing homes to potential buyers. Holihan worked up to 80 hours per week pursuing these two business activities.

In April and May 1993, Holihan twice more requested extensions of his leave. Each request was supported by another cer-

---

**1.** Lucky maintained a liberal leave policy for nonunion employees, such as store managers. Lucky's policy allowed these employees to take up to six months continuous leave for any reason.

tification from Dr. Cramer diagnosing Holihan as having anxiety and depression. Lucky granted the first request, but denied the second and fired Holihan. In its termination letter, Lucky explained that Holihan had already exceeded the six months of leave allowed under Lucky's leave policy. If Lucky had granted the final request, Holihan's leave would have exceeded the policy limits by three months.

On September 1, 1993, Holihan reapplied for a job at Lucky. Lucky agreed to rehire him, but only as a clerk because no store manager positions were open at the time. Lucky told Holihan that he could apply for a store manager position once one became available, but Holihan refused the offer.

On May 27, 1994, Holihan filed a complaint in the district court alleging Lucky discriminated against him on the basis of his disability.[2] The district court granted summary judgment in favor of Lucky, holding that Holihan was not disabled within the meaning of the ADA. The district court concluded that Holihan had failed to come forward with sufficient evidence to raise a genuine issue of material fact as to whether he was actually disabled or whether Lucky regarded him as disabled, within the meaning of the ADA. This appeal followed.

## II

■ We review the district court's grant of summary judgment de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute and the district court correctly applied the relevant substantive law. *Id.*

## III

■ Section 12112 of the ADA prohibits employers from discriminating against disabled individuals on the basis of their disabilities. 42 U.S.C. § 12112(a). Section 12102(2)(A) defines "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities." Section 12102(2)(C) also defines "disability" to include "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

We first consider the question whether a genuine dispute of material fact exists with regard to whether Holihan was actually disabled within the meaning of the ADA. To determine this, we consider whether Holihan suffered from a "physical or mental impairment" which "substantially limit[ed] one or more of [his] major life activities." 42 U.S.C. § 12102(2).

We assume for the purposes of this appeal that Holihan suffered from a physical or mental impairment covered by the ADA.[3] Even if Holihan had a mental or physical

---

**2.** Holihan also raised several claims arising under California law. The district court chose not to exercise jurisdiction over these state law claims. The parties do not challenge this decision and therefore we do not address it. We note, however, that in view of our reversal of the district court's summary judgment, that court may wish to reconsider its dismissal of Holihan's state law claims.

**3.** Although Lucky would have us hold that the impairments of which Holihan complained are not recognized mental disorders, we decline to do so. Holihan's stress and depression could be covered by the ADA. An EEOC Technical Assistance Manual on the ADA provides that " 'stress' and 'depression' are conditions that may or may not be considered impairments, depending on whether these conditions result from a documented physiological or mental disorder." EEOC Technical Assistance Manual on the Em-

ployment Provisions (Title I) of the Americans With Disabilities Act § 2.1(a)(i), at II–3 (1992).

It is possible that Holihan's stress and depression resulted from "organic mental syndrome," which contrary to Lucky's argument is a recognized mental disorder. The Diagnostic and Statistical Manual of Mental Disorders, a comprehensive classification of mental disorders published by the American Psychiatric Association, includes a sixty-three page section entitled "Organic Mental Syndromes," which discusses dementia, delirium, and other disorders that affect one's personality. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 100–63 (3d ed. rev.1987) (DSM). It lists "organic mental syndrome, not otherwise specified" as a residual category for organic mental syndromes that do not fit neatly into the standard patterns of dementia and delirium. *Id.* at 100.

impairment covered by the ADA, however, we conclude that the impairment did not substantially limit any of his major life activities. Therefore, Holihan was not actually disabled within the meaning of section 12102(2)(A).

Holihan was not substantially limited from the major life activity he alleged, working. *See* 29 C.F.R. § 1630.2(i) (working is a major life activity within the ADA). For an impairment to substantially limit one's ability to work, it must not merely prevent one from working at a particular job; it must prevent one from working at a class of jobs or a broad range of jobs in various classes. 29 C.F.R. § 1630.2(j)(3).

Holihan's impairment was not severe enough to substantially limit his ability to work. During the final months of his leave of absence Holihan worked considerable hours pursuing real estate and sign-making business activities. According to Holihan's testimony, at least two months prior to his termination he began to set up his sign-making business and to work for a real estate company. He admitted he worked up to eighty hours a week pursuing these occupations beginning in March or April 1993.

Holihan does not challenge the assertion that he worked numerous hours pursuing two different occupations while on leave of absence. Nor does he argue that these occupations were of a different class than his store manager job, such that he was limited from the latter but not the former.[4] Rather, he argues that this work constituted "mitigating measures," akin to treatment, that enabled him to overcome his impairment.

Under EEOC regulations, we are not to consider mitigating measures in determining whether an individual is disabled. 29 C.F.R. § 1630.2(h)(App.). However, Holihan provides no evidence to back up his assertion that this outside work was a form of treatment. No doctor recommended Holihan engage in outside work, nor is it apparent that real estate or sign-making work is a form of therapy for Holihan's impairments.

We hold that Holihan failed to come forward with sufficient evidence to raise a genuine issue of material fact on the question of his actual disability. We conclude as a matter of law that he was not actually disabled within the meaning of 42 U.S.C. § 12102(2)(A) because he was not substantially limited from any major life activity.

■ Even if Holihan were not actually disabled, the ADA prohibits discrimination against individuals "regarded as" disabled. If Lucky regarded Holihan as disabled, Holihan would have a "disability" within the meaning of section 12102(2)(C). We conclude there is a genuine issue of material fact as to this issue.

Lucky called Holihan into two separate meetings to discuss his aberrational behavior. At one of these meetings, Lucky District Manager Church asked Holihan if he was having any "problems;" at the other, Church strongly encouraged Holihan to seek counseling through Lucky's EAP. Lucky also received several doctors' reports diagnosing Holihan with depression, anxiety and stress, including the reports of Drs. Strickler and Cramer.[5] From these facts, a reasonable jury could infer that Lucky regarded Holihan as suffering from a disabling mental condition that substantially limited his ability to work.

On the other hand, the record also contains facts which might lead a trier of fact to conclude that Lucky did not regard Holihan as disabled.

Our obligation in reviewing a grant of summary judgment is to view the facts in the light most favorable to the nonmoving party. So viewed, the facts here create a genuine issue of material fact as to whether Lucky regarded Holihan as disabled within the

---

4. Because Holihan has not raised this argument on appeal, we assume that his job as a store manager was of the same class of work he pursued in his real estate and sign-making endeavors.

5. The record is unclear as to whether Lucky received the diagnosis of Dr. McDaniel, one of the doctors to whom Lucky sent Holihan in connection with the worker's compensation claim.

meaning of section 12102(2)(C) of the ADA.[6]

REVERSED.

---

**6.** Our holding is limited to one aspect of Holihan's *prima facie* case, whether he had a "disability" within the meaning of 42 U.S.C. § 12102(2). We express no opinion on the other elements of Holihan's ADA claim.