**Judy WILKING, Plaintiff,**

v.

**COUNTY OF RAMSEY, Defendant.**

**No. CIV 4–96–140(DSD/JMM).**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 6, 1997.

Maurice W. O'Brien, Nancy J. Miller, Miller, O'Brien, and Bloom, Minneapolis, MN, for plaintiff.

Kristi Swanson Wendorff, Eric L. Leonard, Ramsey County Attorney Office, St. Paul, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendant for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

## BACKGROUND

Ramsey County Mental Health Clinic ("RCMHC") is a part of Ramsey County Human Services and provides mental health services to residents of Ramsey County. Plaintiff Judy Wilking ("Wilking") began working at RCMHC as a Clinical Nurse Spe-

cialist in February, 1993. Wilking had been recruited by Deborah Brown ("Brown"), Clinical Nurse Specialist at RCMHC, in order to meet RCMHC's need for additional staff in its psychiatry clinic and a growing demand for psychiatric medication services.[1] The position offered to Wilking consisted primarily of psychopharmacology-based, or medication management work, with a smaller percentage of the work involving therapy. RCMHC did not advertise the position, nor did it consider any other candidates.

On February 1, 1993, Wilking began at RCMHC in a provisional appointment before completing the competitive application process to gain civil service status. On March 29, 1993, Wilking was hired through the civil service process and placed on a one-year probationary status. Brown was Wilking's immediate supervisor.

Sometime in June 1993, Brown articulated concerns about Wilking's job performance to Rebecca Glasscock ("Glasscock"), clinic manager, and DeAnn LaValle ("LaValle"), the human resources representative of the clinic. After several discussions with both Brown and Glasscock, LaValle told Brown to put her concerns in Wilking's three month performance evaluation. In early July 1993, Wilking received the performance evaluation.

During the review of the evaluation, Brown told Wilking that several areas of Wilking's performance, including employee contacts, volume of work, acceptance of direction, and work planning, "require[d] improvement." Wilking's problems with attendance and observance of work hours were also brought to her attention. Wilking asked that her job requirements be defined more clearly, and requested a written job description. Following the meeting, Wilking submitted a written response about her disagreement with Brown's assessment.

---

1. Brown had supervised Wilking for several months at the RCMHC in 1983 when Wilking was completing training there. Brown was also aware that Wilking had been trained, during her employment with Dakota County Mental Health Clinic, in the use of psychiatric medications, and that Wilking had had extensive responsibility and experience managing psychiatric patients. In the cover letter provided by Wilking with her resume, Wilking stated that she "underst[ood] the position involve[d] medication management, an area in which [she] had eight years of cumulative experience at Dakota Mental Health and United Hospital." Aff. of Eric Leonard, Ex. 6. Wilking also had a Master's degree in psychiatric nursing.

On July 8, 1993, Dr. Michael Niehans submitted a letter of support for Wilking.[2] However, in late August and early September 1993, Dr. Niehans initiated separate meetings with both Brown and Glasscock in which he expressed concerns about Wilking's performance in the area of medication work.[3] Dr. Niehans indicated his embarrassment at having submitted the July letter and his concern about his legal responsibility for Wilking.

On September 13, 1993, Brown, Glasscock and LaValle again discussed Wilking's performance. It was concluded that, while Wilking had improved in some areas, her level of performance as a probationary employee was not satisfactory.

On September 17, 1993, Wilking was hospitalized as a result of complications from depression medication. On September 20, 1993, LaValle met with Keith Gray, LaValle's supervisor and personnel manager at RCMHC, to discuss Wilking's job performance. On September 21, 1993, LaValle, Glasscock and Don Mockenhaupt, Director of Ramsey County Mental Health Division discussed Wilking's performance. Both Gray and Mockenhaupt approved a decision to not offer Wilking permanent employment. Due to Wilking's hospitalization, no date was set for the termination.

On October 4, 1993, Wilking returned to work at RCMHC on a reduced schedule. Three weeks later she was released to full-time work with no restrictions. Wilking requested no further accommodations. After Wilking asked about her employment status, Brown, Glasscock, and LaValle met to plan Wilking's termination. On October 22, 1993, Wilking was told that she would not be offered permanent employment.

Following her employment with RCMHC, Wilking held a six-month position with Roseville Schools. She then accepted a position which she currently holds as a nursing instructor at North Hennepin Community College. Wilking also provides therapy to two patients in her home.

Plaintiff commenced this action on February 15, 1996, and filed an Amended Complaint on May 8, 1996. Wilking alleges discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363.01–363.14. Defendant moves for summary judgment.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn

---

**2.** Dr. Niehans was a psychiatrist working in the same consultation group as Wilking. He had not had an extensive working relationship with the plaintiff when he submitted the letter of support. In late July, Wilking and Dr. Niehans began working together on a more concentrated basis.

**3.** Dr. Niehans explained that his apprehensions stemmed from several factors, including Wilking's failure to appear at supervisory meetings he had scheduled with her, her failure to have him co-sign patient charts, her charting and diagnostic assessment, her perceived indifference to his suggestions and his articulated concerns about her work, and her lack of knowledge in the field of anxiety disorders.

in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. However, if a plaintiff fails to support an essential element of a claim, then summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## A. Americans with Disabilities Act

The ADA was enacted to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1) (1994). It prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). By ADA definition, "discriminate" includes "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the terms of the ADA, a "reasonable accommodation" is an accommodation that does not impose an undue hardship, such that the employer would be forced to incur significant difficulty or expense. 42 U.S.C. § 12112(b)(5)(A); 42 U.S.C. § 12111(10)(A)-(B).

To establish a prima facie case of disability discrimination under the ADA, Wilking must show: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, with or without a reasonable accommodation, to perform the essential functions of the job; and (3) that she suffered an adverse employment decision because of her disability. *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 616 (8th Cir.1997); *Miners v. Cargill Communications, Inc.,* 113 F.3d 820, 823 (8th Cir.1997), *pet. for cert. filed,* 66 USLW 3194 (Sep 90, 1997); *Price v. S–B Power Tool,* 75 F.3d 362, 365 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996). Federal courts analyze disability discrimination claims by using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Miners,* 113 F.3d at 823; *Aucutt v. Six Flags Over Mid–Am., Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996). If Wilking can establish her prima facie case, the burden of production shifts to RCMHC to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–55, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). If RCMHC meets this burden, Wilking can succeed only if she can show that RCMHC's stated reason is mere pretext and that she was terminated because of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). To ultimately prevail on her ADA claim, Wilking must establish that RCMHC discharged her "because of" her disability. *Mason v. Frank,* 32 F.3d 315, 318–19 (8th Cir.1994).

Defendant RCMHC asserts that summary judgment is appropriate because: (1) the plaintiff cannot establish the elements of a prima facie case of disability discrimination, and (2) even assuming plaintiff could establish her prima facie case, she cannot satisfy her ultimate burden of establishing pretext or discrimination on the part of RCMHC.

Specifically, defendant alleges that plaintiff is not disabled within the meaning of the ADA, that she is not "otherwise qualified" to perform the essential functions of the job, and that she was not refused permanent employment "because of" a disability. Plaintiff argues that she has submitted sufficient evidence to enable a jury reasonably to find in her favor on each element of her prima facie case, and that RCMHC's reasons for her termination are a pretext for discrimination.

### 1. Plaintiff's Prima Facie Case
#### a. "Disability" Under the ADA

■ Plaintiff contends that her medical condition fits within the definition of disability provided by 42 U.S.C. § 12102(2)(A) because she has an impairment that substantially limits one or more major life activity. Alternatively, Wilking contends that RCMHC regarded her as having such an impairment. See 42 U.S.C. § 12102(2)(C).

A mental impairment includes "any mental or psychological disorder, such as . . . emotional or mental illness. . . ." 29 C.F.R. § 1630.2(h)(2). While RCMHC acknowledges Wilking's depression diagnosis and does not dispute that she has a mental impairment, it maintains that Wilking is not "disabled" because she is not substantially impaired in a major life activity. See 42 U.S.C. § 12102(2)(A). Because the ADA does not itself define "major life activities," courts look for guidance to the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), the agency responsible for implementing the ADA. See 29 C.F.R. § 1630.2. "Major life activities" are "those basic activities that the average person in the general population can perform with little or no difficulty," including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). The regulations also indicate that the question of whether an impairment is substantially limiting turns on "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] long-term impact . . . of, or resulting from, the impairment." 29 C.F.R. § 1630.2(j)(2); *Doane v.*

*City of Omaha,* 115 F.3d 624, 627 (8th Cir. 1997) (citing *Aucutt,* 85 F.3d at 1319).

Wilking contends that she should be considered disabled because, without medication, she has trouble sleeping, concentrating, and caring for herself. Plaintiff cites the EEOC interpretative guidelines which state: "The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines. . . ." 29 C.F.R. § 1630, App. § 1630.2(j). RCMHC contends that Wilking's condition, when properly treated, does not substantially impair any major life activity.

The EEOC guidelines have provoked a debate among the federal courts with respect to the consideration of medication. The Eighth Circuit has not specifically addressed this issue. See *Sicard v. City of Sioux City,* 950 F.Supp. 1420, 1422 (N.D.Iowa 1996) (noting the Eighth Circuit's silence on the issue). Some courts find that to disregard mitigating measures would be to ignore the ADA's requirement of a substantially limiting impairment. See *Ellison v. Software Spectrum,* 85 F.3d 187, 191 n. 3 (5th Cir.1996); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir. 1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Moore v. City of Overland Park,* 950 F.Supp. 1081, 1088 (D.Kan.1996); *Murphy v. United Parcel Serv.,* 946 F.Supp. 872, 880 (D.Kan.1996); *Schluter v. Industrial Coils, Inc.,* 928 F.Supp. 1437, 1444 (W.D.Wis.1996); *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813 (N.D.Tex.1994).

In *Ellison,* the court stated that "had Congress intended that substantial limitation be determined without regard to mitigating measures, it would have provided for coverage under § 12102(2)(A) for impairments that have the *potential* to substantially limit a major life activity." 85 F.3d at 191–92 n. 3 (emphasis in original). Similarly, in *Murphy,* the district court found that the EEOC interpretive guideline is in direct conflict with the language of the statute which requires plaintiffs in ADA cases to show that an impairment "substantially limits" their lives. 946 F.Supp. at 881. The *Murphy* court reasoned

that, although agency interpretations are to be given deference according to the Supreme Court's decision in *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), no deference is due when the agency's language is in contravention with the plain language of the statute. 946 F.Supp. at 880–81. *See also Schluter*, 928 F.Supp. at 1444–45 (requiring plaintiff to show how condition affects her in fact, rather than how it would affect her hypothetically without medication); *Coghlan*, 851 F.Supp. at 813 (rejecting "EEOC's gloss" as contrary to statute). These courts have rejected the guidance and have determined that an individual who takes medication without being substantially limited in any major life activity is not disabled within the meaning of the ADA.

Other courts have reached an opposite conclusion, finding nothing inconsistent in the language of the ADA and the interpretive guidance, and giving deference to agency interpretation. *See, e.g., Harris v. H & W Contracting Co.*, 102 F.3d 516, 520 (11th Cir. 1996) (reviewing legislative history and concluding that the interpretive guidance is based on a permissible construction of the statute); *Holihan v. Lucky Stores, Inc.*, 87 F.3d 362, 366 (9th Cir.1996) (stating simply that "[u]nder the EEOC regulations, we are not to consider mitigating measures"), *cert. denied*, —— U.S. ——, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446 (7th Cir.1995) (citing the interpretive guidelines while also noting that the mere use of mitigating measures does not automatically prove the presence of a disability).

This court joins those that have rejected this portion of the EEOC interpretative guidance. This court agrees that the EEOC's interpretation is in direct conflict with the language of the statute requiring plaintiffs in ADA cases to show that an impairment "sub-stantially limits" a major life activity. Therefore, the beneficial effects of Wilking's medication will be considered.

■ Thus, the court must determine whether the plaintiff has presented sufficient evidence from which a reasonable jury could conclude that her medicated depression constitutes a disability under the ADA. The plaintiff's testimony shows that her symptoms of depression dissipated when she began taking medication in 1984. Wilking claims that, as long as she takes her medication, she suffers no symptoms and does not believe that her work suffers because of her depression. Aff. of Eric Leonard, Ex. 1 at 63–64, 138. Without additional evidence, a reasonable jury could not conclude that plaintiff is substantially limited in a major life activity.[4]

■ Wilking alternatively contends that she is disabled under the Act because defendant perceived her depression as a condition that substantially limited her in the major life activity of working. RCMHC maintains that Wilking was not perceived as disabled.

■ The ADA defines "disability" broadly to include persons who have impairments which do not amount to substantial limitations but who are viewed as substantially limited by their employer. *See* 42 U.S.C. § 12102(2)(C); *Aucutt*, 85 F.3d at 1318; *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995). An employer "regards" an employee as disabled only where the employer perceives or treats the employee as substantially impaired in a major life activity. *See Webb v. Mercy Hosp.*, 102 F.3d 958, 959 (8th Cir.1996); *Wooten*, 58 F.3d at 385. Diagnosis alone is not sufficient. *Webb*, 102 F.3d at 959–60 (finding, where plaintiff produced no evidence that her supervisors were aware of a previous diagnosis and hospitalization for depression, diagnosis itself could not

---

**4.** If plaintiff's alleged disability were considered in an *untreated* state, Wilking has sufficient evidence to raise a genuine issue of material fact that her depression constitutes a "disability" which substantially limits a major life activity. Wilking claims that, prior to receiving medication for depression, she "wasn't sleeping ... had lost about 40 pounds ... had no appetite, couldn't concentrate, couldn't get out of bed in the morning ... [and could only] cry.... [The symptoms got] so extreme that [she] couldn't even function ... couldn't ... get out of bed or ... take care of [her] kids. It took all the energy [she] had just to take a shower." Aff. of Nancy J. Miller, Ex. I at 59. Defendant does not contest these assertions and there is nothing in the record which makes plaintiff's evidence insufficient.

be the basis for inferring the plaintiff was regarded as impaired).

In support of her position, Wilking refers the court to Glasscock's written script of the termination meeting: "I can say that this is realistically a stressful place to work and it's not going to get better. This is not a good fit if someone has some vulnerability to stress, as [Wilking] apparently does." Aff. of Nancy J. Miller, Ex. X. Wilking also points to Brown's admission that she found it "hard to know when you're a therapist and when you're a supervisor." Aff. of Nancy J. Miller, Ex. D at 137. However, plaintiff's argument is unpersuasive.

■ An employer's acknowledgment of job stress does not, without more, demonstrate that the employer regarded a plaintiff as disabled. *See Stewart v. County of Brown*, 86 F.3d 107, 111 (7th Cir.1996) (holding plaintiff was not perceived as disabled even where the employer described the employee as "excitable," ordered psychological evaluations, and stated plaintiff was "emotionally or psychologically imbalanced"); *Johnson v. Boardman Petroleum, Inc.*, 923 F.Supp. 1563, 1569 (S.D.Ga.1996) (finding employer's statement that employee was "not mentally or physically able to handle the pressures of her job anymore as a district supervisor," insufficient evidence from which a jury could reasonably determine that the employer believed the employee had a mental disability which substantially impaired the ability to work). In this case, Glasscock's notes do no more than indicate that she was aware that Wilking was suffering from job stress. Wilking herself concedes that none of her supervisors knew she was suffering from depression, and admits she never told anyone that she was seeing a therapist or taking medication. Aff. of Eric Leonard, Ex. 1 at 70, 129, 140. Brown's statement does no more than indicate her lack of supervisory experience. *See* Aff. of Nancy J. Miller, Ex. D at 135, 137.

Moreover, RCMHC continually entrusted Wilking with job responsibilities and set performance expectations throughout her employment. *See Howard v. Navistar Int'l, Transp. Corp.*, 904 F.Supp. 922, 930 (E.D.Wis.1995) (determining that evidence that employer continued to assign work to ADA plaintiff establishes that employer did not consider plaintiff to be substantially limited), *aff'd*, 107 F.3d 13 (7th Cir.1997); *Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 51 (D.D.Ma.1996), *aff'd*, 105 F.3d 12 (1st Cir.1997). Without more, plaintiff's evidence does not rise to the level of demonstrating RCMHC thought she was unable to work or engage in any other major life activity because of a disability. Consequently, Wilking has failed to demonstrate that she is disabled.

### b. An "Otherwise Qualified" Individual under the ADA

[11] Even assuming Wilking can establish the first element of her prima facie case, she must also show she is a "qualified individual with a disability." 42 U.S.C. § 12112(a); *Benson v. Northwest Airlines*, 62 F.3d 1108, 1111 (8th Cir.1995). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Eighth Circuit has formulated a two-pronged test to determine whether a person is "qualified" within the meaning of the ADA, asking first whether the individual meets the necessary prerequisites for the job, and then whether she can perform the essential job functions, with or without reasonable accommodation. *See Valentine v. American Home Shield Corp.*, 939 F.Supp. 1376, 1394 (N.D.Iowa 1996) (citations omitted).

Wilking asserts that there are genuine issues of material fact as to whether she is "otherwise qualified," maintaining that RCMHC considered her qualifications "exceptional." Defendant claims that while it possibly viewed Wilking as exceptionally qualified when it first hired her, Wilking did not adequately perform her job and therefore is not "otherwise qualified."

■ Plaintiff, citing *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940 (8th Cir.1994), and *Miners*, 113 F.3d at 820, contends that the defendant misconstrues the qualification element of the prima facie case.

Rather, she asserts that a discrimination defendant cannot prevent a plaintiff from establishing that she is qualified "merely [by] citing inadequate job performance" without also affording the plaintiff an opportunity to show that inadequate job performance did not actually motivate the decision. Pl.'s Mem. in Opp'n to Summ. J. (Docket No. 96–CV–140) at 10–11. However, this court finds more persuasive the analysis articulated by the Eighth Circuit in *Miller v. Citizens Sec. Group, Inc.*, 116 F.3d 343, 346 (8th Cir.1997), particularly where the plaintiff is a probationary employee who was hired for a specific purpose. In *Miller*, the court explains that "McDonnell Douglas makes plain that the facts in Title VII cases will vary, and that the prima facie proof required is 'not necessarily applicable in every respect to differing factual situations,'. . . . [In some cases], a correct statement of the McDonnell Douglas prima facie elements . . . [includes whether] the employee 'was performing his job at a level that met his employer's legitimate expectations.'" *Id.* (citations omitted). Thus, an "employer may fire [an] employee because [s]he cannot perform h[er] job adequately, i.e., [s]he is not a 'qualified individual' within the meaning of the ADA." *Hedberg v. Indiana Bell Tel.*, 47 F.3d 928, 934 (7th Cir.1995). Because the ADA does not relieve a disabled employee from the obligation to perform the essential functions of the job, RCMHC is not obligated to ignore plaintiff's job performance. *See Harris v. Polk County, Iowa*, 103 F.3d 696, 697 (8th Cir.1996) (agreeing that an employer may hold disabled employees to the same standards of conduct as all other employees); 29 C.F.R. § 1630.2(n)(2)(i) (stating factor to be considered in determining whether a particular function is essential includes whether the position exists to perform a particular function).

A review of the record does not reveal a genuine issue of material fact as to whether Wilking was meeting the legitimate expectations of RCMHC when RCMHC denied her permanent employment. There is overwhelming evidence that defendant was not satisfied with plaintiff's job performance even before her hospitalization. It is clear from the deposition testimony of Brown, Glas-scock, and LaValle that there was a concern about Wilking's job performance by June of 1993. These concerns were addressed in Wilking's three-month performance evaluation, and Wilking was given a detailed explanation of areas that needed improvement. There is evidence of complaints by other employees about Wilking's performance, and even Dr. Niehans, who had earlier submitted a support letter, met with Wilking's supervisors about his concerns with Wilking's work performance. *See* Aff. of Eric Leonard, Ex. 1 at 127; Aff. of Eric Leonard, Ex. 2 at 91–92. Wilking herself admits that she understood she was hired to fill a specific niche and that she was not meeting required productivity levels. Aff. of Eric Leonard, Ex. 1 at 41–42, 78–79. All of this occurred before Wilking's hospitalization. *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 61–62 (4th Cir.1995) (evidence in annual performance evaluations and internal memorandum documenting poor job performance established that defendant was not satisfied with plaintiff's performance); *Pouncy v. Vulcan Materials Co.*, 920 F.Supp. 1566, 1581–82 (N.D.Ala.1996). Plaintiff has failed to establish the second element of her prima facie case.

### c. Termination "Because of" a Disability

Even assuming Wilking was an otherwise qualified individual, this does not in itself entitle plaintiff to relief under the ADA. The ADA does not protect employees with disabilities from all adverse employment decisions; only from discrimination on the basis of the disability. *Wooten*, 58 F.3d at 385. To avoid summary judgment, Wilking must still show that her discharge occurred under circumstances that raise a reasonable inference of discrimination. *Id.*

RCMHC contends that Wilking was terminated, not because of her disability, but because her performance and productivity were inadequate. Defendant claims that the decision to terminate Wilking occurred prior to her hospitalization. Wilking alleges that the decision to terminate her was not made at that time, and therefore was made on the basis of her alleged disability.

Wilking alleges that Brown did not recall that the decision to terminate Wilking was made at the September meeting, and that LaValle's notes from that meeting said nothing of termination. However, Brown and LaValle's deposition testimony demonstrate that they both understood that the decision to terminate Wilking had been made at the meeting. *See* Aff. of Nancy J. Miller, Ex. D at 202–03; Aff. of Eric Leonard, Ex. 2 at 205; Aff. of Eric Leonard, Ex. 5 at 58, 76. Plaintiff also refers to a conversation between Brown, Glasscock, and Dr. Chastek, a psychiatrist at RCMHC, as raising an inference that the termination decision had not been made. However, Dr. Chastek's testimony states otherwise. *See* Aff. of Nancy J. Miller, Ex. E at 25–32. Plaintiff also contends that if the termination decision had been made in September, there would have been no reason for Brown to prepare a six-month performance review or to ask Dr. Niehans in late September about Wilking's performance. However, the deposition testimony upon which plaintiff relies does not clearly establish a date of reference, nor does it discredit Brown's testimony that she began reviewing Wilking's charts in August. *See* Aff. of Eric Leonard, Ex. 2 at 217, 221. Finally, RCMHC used a deliberative process in making the decision to terminate Wilking. Prior to the three-month evaluation, Brown sought input from both Glasscock and LaValle. The approval of Gray and Mockenhaupt was also received before the termination took place. Wilking has failed to provide sufficient evidence to create a genuine issue of fact regarding the causal connection between her alleged disability and her termination.

### 2. Pretext for Discrimination

Assuming that plaintiff could establish a prima facie case of discrimination, defendant has provided a legitimate, non-discriminatory reason for its decision to terminate Wilking. Wilking has not further demonstrated that her discharge occurred under circumstances that would permit an inference of discrimination. As noted, the record includes evidence, from as early as June 1993, that RCMHC was not satisfied with plaintiff's job performance. Wilking had been warned that she needed to improve, yet her performance did not reach to the level RCMHC expected of a probationary employee. Wilking's own testimony and notes acknowledge that the discussion at the October 22, 1993, meeting focused almost exclusively on performance issues. Aff. of Eric Leonard, Ex. 1 at 234–35; Aff. of Eric Leonard, Ex. 10. While plaintiff devotes much of her brief to challenging the quality of RCMHC's decision, there is insufficient evidence to demonstrate that the decision was a pretext for discrimination.

Moreover, where the plaintiff has presented no evidence of discriminatory intent or pretext, the court heeds the danger of becoming a super-personnel department. *Krenik v. County of LeSueur*, 47 F.3d 953, 960 (8th Cir.1995). RCMHC articulated the reasons for its concerns, and this court will not second-guess its judgment. Because the court finds that plaintiff has not rebutted RCMHC's legitimate, non-discriminatory reason for her discharge, RCMHC is entitled to summary judgment in its favor on plaintiff's ADA claim.[5]

### B. Minnesota Human Rights Act

Count II of plaintiff's Amended Complaint alleges that RCMHC violated the MHRA. Minnesota law provides that it shall be an unfair labor practice for an employer to discharge or otherwise discriminate against an employee on the basis of a disability. Minn. Stat. § 363.03, subds. 1, 2(b, c), and (6). Because Minnesota law parallels the ADA, and MHRA claims are interpreted consistently with claims under the ADA, the court similarly grants summary judgment in favor of defendant on plaintiff's MHRA discrimination claim. *See Miners*, 113 F.3d at 824; *Roberts By & Through Rodenberg–Roberts v. KinderCare Learning Centers, Inc.*, 86 F.3d 844, 846 n. 2 (8th Cir.1996).

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that defendant's motion for

---

5. Because the court finds it appropriate to grant summary judgment on the issues discussed, there

is no need for the court to examine the merits of other issues presented by defendant in this case.

summary judgment (Doc. No. 31) is granted. Plaintiff's action is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**