**Richard W. DEPPE, Plaintiff–Appellant,**

v.

**UNITED AIRLINES, Defendant–Appellee.**

**No. 98–17382.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 2000.

Filed July 11, 2000.

Richard M. Rogers, Mayo & Rogers, San Francisco, California, for the plaintiff-appellant.

William J. Dritsas and Christopher Wilkinson, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, California, for the defendant-appellee.

Before: POLITZ,[1] REINHARDT, and HAWKINS, Circuit Judges.

POLITZ, Circuit Judge:

Richard W. Deppe appeals an adverse summary judgment in his discrimination claim under the Americans with Disabilities Act. Jurisdiction herein is vested by 28 U.S.C. § 1291. For the reasons assigned, we reverse.

## BACKGROUND

Deppe was employed by United Airlines, Inc., as an aircraft radio and electronic line mechanic at its San Francisco Airport facility, from December 1985 until his termination on November 12, 1993. On December 8, 1989, while working Deppe sustained a back and neck injury when a ladder collapsed while he was attempting to exit an aircraft. Because of his injuries, Deppe received temporary disability and vocational rehabilitation benefits under the California workers com-

1. Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

pensation program. The vocational rehabilitation included computer courses at the College of San Mateo and subsequent job placement. United paid approximately $56,000 in benefits between February 5, 1990 and March 15, 1994.

On September 11, 1990 Dr. Gerald Keane, Deppe's treating physician, concluded that his condition had stabilized and that he had sustained a disc herniation at C4–5 with anular bulging at C5–6 and C6–7, resulting in some limitations on range of motion. Additionally, Deppe suffered a right carpal tunnel syndrome. The medical restrictions imposed precluded heavy lifting, repeated bending and stooping, frequent twisting and turning of the neck, and working in tight places. Dr. Keane's report noted that the restrictions placed Deppe in Category D of the California Workers' Compensation Appeals Board guidelines, which category contemplates that the individual has lost approximately one-half of his pre-injury capacity for lifting, bending, and stooping. The report further advised that Deppe's condition was "permanent and stationary," and that he most likely would be unable to return to his position as a line mechanic.

The Collective Bargaining Agreement (CBA) between United and Deppe's union provided for the placement of injured employees on extended illness status (EIS) for up to a maximum of two years.[2] Deppe was placed on EIS on October 12, 1990. United inadvertently continued this status until August 1993. In accordance with the CBA, United informed Deppe, by letter dated August 31, 1993, that he had an additional 60 days to remain on EIS leave. The letter instructed Deppe to contact the United medical department to schedule a physical examination. On October 11, 1993, Deppe was examined by Dr. John McCann, a United staff physician. Despite Deppe's claim that he had fully recovered, Dr. McCann continued Deppe's restrictions based on Dr. Keane's September 11, 1990 evaluation and the June 2,

1992 report of Dr. Bryan Barber, an orthopaedic surgeon. The prognosis of Dr. Barber, like that of Dr. Keane, was that Deppe's condition was permanent and that he would be unable to return to his previous work as a mechanic. Dr. McCann, however, informed Deppe of the need for a re-evaluation and an updated medical report.

Although Deppe was to be terminated on November 1, 1993, United extended his EIS an additional two weeks to permit a review by its Reasonable Accommodation Committee. The committee was charged with determining whether any accommodations could be made in Deppe's mechanic position and whether he could be placed in a different position consistent with his restrictions. The committee concluded that no accommodation could be made in the former position and, due to a moratorium on hiring, there were no other open positions in which he could be placed. As noted, employment was ended on November 12, 1993.

Dr. Keane subsequently cleared Deppe for work on January 28, 1994. United refused reinstatement and Deppe filed a charge of employment discrimination with the EEOC. After receiving his right-to-sue letter, he filed the instant action claiming an unlawful termination based on United's erroneous perception that he was disabled. He sought a return to his former position, reinstatement of benefits, and back pay. He also sought compensatory and punitive damages and attorney's fees. The trial court initially denied a motion by United for summary judgment but, after rebriefing, granted same, concluding that United did not regard Deppe as disabled within the meaning of the ADA. This timely appeal followed.

## ANALYSIS

We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Deppe, the nonmovant.[3] Summary judgment is appropri-

---

**2.** Employees on EIS retain their seniority and continue to receive insurance benefits.

**3.** *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 365 (9th Cir.1996).

ate if there is no genuine issue of material fact and the district court correctly applied the substantive law.[4]

Title I of the ADA prohibits an employer from discharging a "qualified individual with a disability" solely on the basis of that employee's disability.[5] At issue herein is whether Deppe was disabled under the ADA at the time United terminated his employment. The ADA defines "disability" with respect to an individual as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.[6]

Under the interpretive regulations promulgated by the EEOC, working is considered a major life activity.[7] With respect to working, "substantially limited" means that one is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[8] The regulations further specify that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."[9] In "regarded as" cases, the employer must perceive the individual as having an actual disability under the ADA.[10] In the case at bar, to avoid a summary judgment disposition Deppe must show that at the time he was terminated there was at least a question whether United regarded him as having a physical or mental impairment that substantially limited his ability to work.[11] Our review of the record persuades that a genuine issue of material fact exists as to whether United regarded Deppe as disabled. Summary judgment therefore was not warranted.

The record reflects that those involved in the decision to terminate Deppe included Charlene Hardee, Michael Johnson, Dr. McCann, Elizabeth Baltz, as well as others on the Reasonable Accommodations Committee. In his first deposition, Michael Johnson testified that before Deppe was placed on EIS he had attempted to work in a parts-ordering position that required computer inputting and sitting in a chair for extended periods of time. This work was discontinued because Deppe said his physical condition prevented him from fulfilling those functions. Johnson further testified that although this occurred before October, 1991, he believed that Deppe was still precluded from that type of job in 1993. In a deposition taken approximately two and a half years later, however, Johnson changed his testimony with respect to the same questions. He then testified that he was aware that Deppe could not perform the computer work prior to his EIS, but that he did not know, in 1993, whether those same restrictions were still applicable. Additionally, Johnson stated that he believed that Deppe would have been able to perform "parts ordering duties on a limited time period, shop mechanic positions, planner positions, engineering positions and reservations positions." The record is silent as to whether the other members of the Reasonable Accommodation Committee were influenced by John-

4. *Id.*

5. 42 U.S.C. § 12112(a).

6. 42 U.S.C. § 12102(2).

7. 29 C.F.R. § 1630.2(i); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539 (9th Cir. 1997).

8. 29 C.F.R. § 1630.2(j)(3)(i)

9. *Id.*

10. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 (1999); *Thompson*, 121 F.3d at 541.

11. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985) ("The asserted basis for the employer's decision ... is limited to the evidence relied on by the employer at the time the decision was made."). Thus, Deppe's January 1994 Functional Capacity Exam and United's evidence of Deppe's current employment are irrelevant to this claim.

son's understanding of Deppe's restrictions.[12]

There is also a factual dispute whether Deppe's vocational rehabilitation was taken into account by United in its evaluation of his ability to work. In her declaration, Charlene Hardee stated that she considered Deppe for positions using the computer skills acquired in his vocational training. Elizabeth Baltz's notes from the Reasonable Accommodation Committee meeting reflect that there were no open computer technician positions at United, but she also opines that Deppe was not qualified for a computer position because he had not yet completed his training. An assessment of one's training, knowledge, and skills is important in determining whether the individual is disabled within the meaning of the ADA. This apparent contradiction has some significance.[13]

This conflicting testimony, when considered with the essentially unchallenged permanent and stationary medical limitations, could lead a rational trier of fact to conclude that those responsible for the termination regarded Deppe as significantly restricted in his ability to perform a broad range of jobs in various classes, as compared to others with comparable levels of skill, training, and experience.[14] Because the court must draw all inferences in favor of the non-moving party in a summary judgment consideration, and may not make credibility determinations, the grant of summary judgment in the instant case was inappropriate.[15]

■■■ Deppe next contends that the district court erroneously rejected the report of his vocational expert. We review the exclusion of expert testimony for abuse of discretion.[16] The district court concluded that expert opinions are irrelevant in "regarded as" cases because they do not address the actual perceptions of restrictions. This reasoning, however, misapprehends the import of an expert evaluation. As stated earlier, to succeed in a "regarded as" claim, an employee must show that he was perceived as having an impairment that substantially limits his ability to work. Thus, because the vocational expert's report is relevant to the issue whether United regarded Deppe as disabled within the meaning of the ADA,[17] we must conclude that the district court abused its discretion in excluding same.[18]

■■■ Finally, we hold that the district court erroneously concluded that Deppe failed to exhaust his administrative remedies in his "record of disability" claim.[19]

---

**12.** Johnson testified that he was unable to recall whether he communicated his understanding of Deppe's computer and sitting limitations to others evaluating Deppe's work capabilities.

**13.** 29 C.F.R. § 1630.2(j)(3)(i) and (ii).

**14.** *Sutton,* 119 S.Ct. at 2151; *Holihan,* 87 F.3d at 366. We also find compelling Dr. McCann's characterization, in his deposition, of Dr. Keane's medical report as diagnosing Deppe as "totally and permanently disabled." *See Kirkingburg v. Albertson's, Inc.,* 143 F.3d 1228, 1233 (9th Cir.1998) ("Because Kirkingburg has presented evidence showing that one of Albertson's managers described him as 'blind in one eye or legally blind,' he has established a genuine issue as to whether his employer believed he was disabled."), *rev'd on other grounds,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

**15.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

**16.** *Maffei v. Northern Ins. Co.,* 12 F.3d 892, 897 (9th Cir.1993).

**17.** 29 C.F.R. § 1630.2(j)(3); *Deane v. Pocono Med. Ctr.,* 142 F.3d 138, 145 (3d Cir.1998) (en banc) (considering vocational expert's report and concluding that report created a triable issue of fact as to whether employer regarded employee as disabled).

**18.** Our decision on this issue is confined to the district court's determination that such expert reports are irrelevant in claims brought under § 12102(2)(C). As such, we proffer no opinion on whether the report meets the general criteria for admissibility.

**19.** 42 U.S.C. § 12102(2)(B). Whether Deppe failed to exhaust his administrative remedies was addressed by the district court at the second summary judgment hearing, but the record does not indicate whether the court

Deppe's EEOC charge stated that he was terminated because of a "perceived disability" but did not explicitly state that he was proceeding under a "record of" theory of discrimination. We review the jurisdictional determination *de novo.*[20] The district court has jurisdiction over any charges of discrimination that are "like or reasonably related" to the allegations made in the EEOC charge, or that fall within the "EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[21] The EEOC charge must be construed "with the utmost liberality."[22] Deppe's statement in his affidavit to the EEOC that United's staff physician imposed medical restrictions based on "18 month old medical evaluations" is "reasonably related" to his record of disability claim. Further, because United's alleged misperception of Deppe's abilities is closely connected with Dr. Keane's initial erroneous report that his condition was permanent, the record of disability claim could reasonably have been expected to grow out of the EEOC's investigation of his charge. Either of these bases would suffice to exhaust the administrative remedies with respect to the record of disability claim.

For these reasons we REVERSE the grant of summary judgment and RE-MAND for further proceedings consistent herewith.

---

definitively ruled on the issue. Because the summary judgment order characterizes Deppe's claim as a "regarded as" case under § 12102(2)(C), we assume that by failing to address the "record of" claim, the court implicitly found that Deppe failed to exhaust his administrative remedies. To prevail on a "record of disability" claim, a plaintiff must show that he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).

20. *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994).

21. *See, e.g., Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997)(exercising jurisdiction over plaintiff's claim of sex discrimination as well as sexual harassment even though her EEOC charge did not explicitly allege a sex discrimination claim distinct from her harassment charge); *Farmer Bros.,* 31 F.3d at 899 (finding that even if EEOC charge had not explicitly raised the claim of discriminatory layoff, exhaustion requirement is satisfied because the layoff was an integral part of Farmer Brothers' discriminatory scheme and therefore was like and reasonably related to allegations of discriminatory failure to recall and rehire); *Serpe v. Four–Phase Systems, Inc.,* 718 F.2d 935, 937 (9th Cir.1983) (holding that although the EEOC charge "did not state in so many words" that defendant had refused to put Serpe in sales because she was a woman, this claim could reasonably be expected to grow out of an investigation of the EEOC charge).

22. *Farmer Bros.,* 31 F.3d at 899.