Douglas K. DVORAK, an
individual, Plaintiff,

v.

CLEAN WATER SERVICES, a
public utility, Defendant.

No. CIV. 04–1384–HU.

United States District Court,
D. Oregon.

May 26, 2006.

Craig A. Crispin, Shelley D. Russell, Crispin Employment Lawyers, Portland, OR, for Plaintiff.

David Wilson, Bullard Smith Jernstedt Wilson, Portland, OR, for Defendant.

ORDER

HAGGERTY, Chief Judge.

In his Findings and Recommendation [65] dated March 20, 2006, Magistrate Judge Hubel recommended granting defendant's Motion for Summary Judgment

[22]. Plaintiff filed objections to the Findings and Recommendation. The Findings and Recommendation was referred to this court on May 5, 2006.

When a party objects to any portion of a Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981).

Plaintiff's objections were filed in a timely manner. The court has given the file of this case a *de novo* review, and has also carefully evaluated the Magistrate's Findings and Recommendations, the objections, and the entire record. Magistrate Judge Hubel provided a thorough analysis of the facts and circumstances regarding this litigation, and that analysis need not be repeated here. Magistrate Judge Hubel's recommendations are sound, correct, and entitled to adoption.

**ANALYSIS**

Plaintiff argues that the Findings and Recommendation erred in concluding that plaintiff (1) did not suffer from a substantial impairment affecting a major life activity, (2) was not regarded by defendant as disabled and unqualified for a broad class of jobs, (3) was not terminated based on a record of disability, (4) did not state a proper Rehabilitation Act claim, and (5) did not state a proper claim under Oregon law. These objections are addressed in turn.

Plaintiff first contends that the Findings and Recommendation erred in rejecting several sources: plaintiff's vocational rehabilitation counselor's letter of July 2004; the opinion of plaintiff's doctor of August 2005; and plaintiff's own declaration from 2005. The Findings and Recommendation determined that these were irrelevant to

plaintiff's disability at the time of termination in 2003.

Plaintiff argues that although that evidence discussed his condition at the time the statements were made, it is still relevant to his condition at the time of termination. Pl's Objections at 2. However, plaintiff testified in his deposition that at the time he was terminated in August 2003 he was still able to perform his job duties and was not prohibited from doing so until his condition deteriorated in 2004. Pl.s Deposition at 117–18 (cited in Findings and Recommendation at 18). Evidence from the vocational rehabilitation counselor and plaintiff's doctor pertained to plaintiff's condition after his deterioration in 2004. The Findings and Recommendation concluded properly that the evidence was not relevant to plaintiff's condition in 2003.

Moreover, the Findings and Recommendation also evaluated plaintiff's claim assuming, *arguendo*, that this evidence was relevant to plaintiff's condition at the time of termination. Findings and Recommendation at 1100, 1102, 1104, 1105 – 1106. The Findings and Recommendation noted that neither medical opinion stated that plaintiff was substantially limited in a major life activity. Findings and Recommendation at 1102. Rather, the medical evidence in the record from 2003 is consistent with plaintiff's deposition testimony that he was not limited at the time of his termination. Findings and Recommendation at 1100. Accordingly, even if the disputed evidence should be considered as relevant, the Findings and Recommendation concluded properly that the evidence fails to establish an issue of material fact regarding a substantial limitation in a major life activity.

Plaintiff next objects to the finding that plaintiff was not regarded as disabled and unqualified for a broad class of jobs by defendant. Pl's Objections at 4. Plaintiff alleges that defendant's Senior Human Resources Analyst Tricia Godfrey stated "I won't even put you behind a computer." *Id.* Plaintiff argues that this statement suggests that defendant considered plaintiff unfit for computer jobs, and that it is reasonable to infer from the statement that defendant believed plaintiff was unqualified for any job with defendant or any job in the regional or national economy. *Id.* at 4–5. Plaintiff's argument is unpersuasive. The Findings and Recommendation correctly recognized that even if the statement was made and meant that defendant considered plaintiff disabled from defendant's sedentary jobs, it would still fall short of indicating that defendant believed plaintiff was disabled from all sedentary jobs in the regional or national economy. Findings and Recommendation at 1106 – 1108. Moreover, plaintiff testified that he had no reason to believe that defendant wanted his employment to end because plaintiff was disabled. Pl.s Deposition at 148–51 (cited in Findings and Recommendation at 1106). Plaintiff fails to demonstrate the existence of material disputes regarding whether his employer believed plaintiff had an impairment that substantially limited him from working in a broad range of jobs.

Plaintiff's third objection is that the Findings and Recommendation improperly rejected plaintiff's claim that he was terminated based on a record of disability. Pl's Objections at 5. This court has considered the objections and concludes that the Findings and Recommendation correctly determined that there was "no record of any kind available to defendant prior to its termination decision to show that plaintiff was ever disabled within the meaning of the statute because no record suggests that plaintiff was substantially limited in any way." Findings and Recommendation at 1109. Plaintiff fails to create an issue of material fact that defendant terminated him based on a record of disability.

Plaintiff also objects to the dismissal of his claims brought under the Rehabilitation Act and Oregon law. These claims were rejected based on the dismissal of the claims under the Americans with Disabilities Act, which were dismissed because no issues of material fact exist as to actual disability, regarded disability, or record of disability. Findings and Recommendation at 1108 – 1110. In light of this court's adoption of the analysis and conclusions of the Findings and Recommendation regarding actual disability, regarded disability, and record of disability, dismissal of these claims is also proper.

Plaintiff requests, alternatively, that if the Findings and Recommendation is upheld, his state law claims be dismissed without prejudice. This request is denied. Judicial economy is best served by addressing the state claims' merits. Discovery has closed, summary judgment motions are complete, and the state law claims have been fully briefed. *See, e.g., Harper v. AutoAlliance Intern., Inc.,* 392 F.3d 195, 210–212 (6th Cir.2004).

## CONCLUSION

For these reasons, Magistrate Judge Hubel's Findings and Recommendation [65] is ADOPTED in its entirety. Defendant's Motion for Summary Judgment [22] is GRANTED.

IT IS SO ORDERED.

## FINDINGS & RECOMMENDATION

HUBEL, United States Magistrate Judge.

Plaintiff Douglas Dvorak brings this disability discrimination case against his former employer, defendant Clean Water Services. In claims brought under state and federal law, plaintiff contends that defendant discriminated against him because of an actual disability, a perceived disability, or a recorded disability, when it terminated his employment in 2003. Plaintiff also alleges that defendant failed to reasonably accommodate his disability.

Defendant moves for summary judgment on all claims. I recommend that defendant's motion be granted.

## BACKGROUND

Defendant is a wastewater treatment and storm water management district that treats wastewater for users throughout the Tualatin River basin. Plaintiff worked as a Field Construction and Maintenance Technician (FCMT) for defendant from 1994 until 2003. The FCMT is a safety-sensitive job. It involves the operation of equipment, working in areas of heavy traffic, and working over open manholes.

Defendant's Risk & Benefits Manager Victor Nolan states in his declaration that FCMTs perform all of the manual labor involved in maintaining, repairing, constructing, and cleaning defendant's collection system, including storm water and sanitary sewer lines, siphon structures, vaults, manholes, catch basins, and other collection system facilities. Nolan Declr. at ¶ 2. Nolan further states that employees in these positions operate a variety of heavy mobile equipment including trackhoes, back-hoes, front end loaders, high pressure cleaners, and vacuum trucks. *Id.* at ¶ 3.

The FCMT position is a physically demanding job that includes exposure to all weather conditions, working in and adjacent to traffic, working in and around permit-required confined spaces, working over open manholes and hatches, and at times responding to urgent situations. *Id.* The combination of environmental conditions and the use of equipment, including high pressure cleaners, high suction vacuum trucks, sensitive camera equipment, commercial motor vehicles, or construction equipment creates a position that is safety sensitive as a job class. *Id.* Any slight

lapse of attention or judgment or careless movement could result in an injury or worse. *Id.*

On April 8, 2002, plaintiff met, at his request, with defendant's Senior Human Resources Analyst Tricia Godfrey. Plaintiff told Godfrey that his doctor had advised him that medications he was taking were damaging his liver and kidneys, that he wanted to use medical marijuana instead of those medications, that he had been approved for a medical marijuana card, but that he did not want to use medical marijuana unless defendant approved.

In response to plaintiff's request, Godfrey wrote a letter to Dr. Phillip Leveque, who had prescribed the medical marijuana for plaintiff, requesting an opinion as to whether plaintiff could perform his job safely while using medical marijuana. Although a copy of Dr. Leveque's response is not in the record, other materials indicate that he opined that the medical marijuana would cause no physical or psychological effect on plaintiff during the day. Exh. 5 to Deft's CSF (Aug. 8, 2002 letter and questionnaire to Dr. Antoniskis); Exh. B to Godfrey Declr. (Dec. 12, 2002 letter from Dr. Antoniskis). Defendant then learned that Dr. Leveque's medical license had been suspended, apparently for improper issuance of medical marijuana prescriptions.

Given Dr. Leveque's suspended status, defendant requested an opinion from another doctor, Dr. Thomas Anderson, who stated that plaintiff could not perform his job safely using medical marijuana. Defendant does not explain how it chose Dr. Anderson and does not explain the basis for its assertion that it was not satisfied that Dr. Anderson's opinion was an objective one. Godfrey Declr. at ¶ 8. Godfrey states that she told plaintiff that defendant wanted to obtain another opinion and plaintiff agreed to that. *Id.* Defendant arranged for plaintiff to see Dr. Andris Antoniskis whose practice included toxicology. Plaintiff agreed to this. *Id.*

Godfrey asserts that at this point in time she did not think, and had no reason to think, that the medications plaintiff was taking at the time caused him to be impaired on the job. *Id.* Plaintiff asserts that defendant knew of his prescription narcotic use at this time.

Defendant supplied Dr. Antoniskis with the prior medical opinions from Dr. Leveque and Dr. Anderson, as well as plaintiff's job description, a list of essential tasks, and a list of physical requirements. Exh. 5 to Deft's CSF. In the letter to Dr. Antoniskis, defendant explained that it understood that plaintiff had been issued a medical marijuana card and that defendant's concern was how the use of medical marijuana off-duty would impact plaintiff's ability to perform his job without creating a direct safety threat to himself or others. *Id.*

Dr. Antoniskis examined plaintiff on August 22, 2002, but plaintiff would not allow the doctor to touch or examine his neck, making the evaluation difficult. Exh. B to Godfrey Declr. (Dec. 5, 2002 Dr. Antoniskis report). In his December 5, 2002 report to defendant, Dr. Antoniskis disapproved of the use of medical marijuana. He noted that he had no "confirmatory collateral evidence" of plaintiff's complaints because his attempts to obtain collateral past and current medical history from the Veteran's Administration (VA), where plaintiff had been a patient for many years, met with no response. Having no "confirmatory collateral evidence," Dr. Antoniskis stated that he had no indication that plaintiff would qualify for a medical marijuana card at that time. *Id.* at p. 3.

Dr. Antoniskis reported that at the time of his examination, plaintiff's medications

included a narcotic analgesic used to treat pain, ibuprofen, and a muscle relaxant[1]. *Id.* at p. 1. Plaintiff reported to Dr. Antoniskis that the genesis of his neck pain was a service-connected accident in 1976 for which he received a 70% service-connected disability and ongoing care at the VA. *Id.* He reported that he had been diagnosed with pinched nerves, bone spurs, and arthritis, although he has never had surgery on his neck. *Id.* He reported no radicular symptoms into his arm, but complained of chronic neck pain and headaches. *Id.*

Dr. Antoniskis strongly disagreed with Dr. Leveque's statement that there would be no physical or psychological effects during work hours as a result of off-duty medical marijuana use. *Id.* at p. 3. Dr. Antoniskis opined that "particularly with his other medication use, there would be sedating effects, but also from the marijuana slowing reflexes and impairing judgement." *Id.* Notably, he stated that "[i]f he is working in a safety sensitive position[,] that would be contraindicated for his marijuana use." *Id.*

He further explained:

My feelings are that his current medications, plus also his use of marijuana, would impair his judgment, reflexes, and thinking clearly, and creating a potential hazard. The Hydrocodone, Vicodin and Methocarbamol are sedating medications and could impair his judgement. Since he works in somewhat of a sensitive position he potentially creates a risk to himself or others that are around him. He states he has been on his meds for seven years by his report and working without problems by his report, but I

have some concerns caused by either the Hydrocodone, Methocarbamol, and also the potentials for marijuana slowing [his] reflexes and judgement.... I feel that it becomes an individual work-related issue about your policies with having individuals work in certain positions while using potentially sedating or mood-altering medications.

*Id.* at pp. 3–4.

Defendant represents, and plaintiff does not dispute, that before 2002, plaintiff took his prescribed pain medications three times per day. Beginning in 2002, his dosage was increased to four or five times per day, including at about 5:30 a.m., 10:00 a.m., 2:00 or 3:00 p.m., and then after he returned home from work. Pltf Depo. at pp. 94–95[2]. Plaintiff admits that the medications caused him to be impaired to such a degree that he could not safely perform safety-sensitive duties such as operating heavy equipment and operating the power hose used to clean pipes. *Id.* at pp. 93–95. Plaintiff stated that he felt impaired for thirty to sixty minutes after each dose of medication. *Id.* at p. 95. Thus, on each shift, he was impaired for one to two hours by his own admission.

During 2002, the pain medications plaintiff took were prescribed by VA physician Dr. Leah Swetnam. Godfrey believed that the concerns raised by Dr. Antoniskis in his December 5, 2002 letter, would be satisfied if Dr. Swetnam would give an opinion that plaintiff could work safely using his pain medications. Godfrey then prepared a detailed letter to Swetnam explaining plaintiff's job duties and requesting her opinion. In response, Godfrey re-

---

1. Dr. Antoniskis's notes indicate plaintiff was taking (1) "5/500" milligrams of hydrocodone, three to four times per day; (2) 800 milligrams of ibuprofen, four times per day; and (3) 500 milligrams of Methocarbamol, four to five times per day. Exh. B to Godfrey Declr. at p. 1.

2. All citations to plaintiff's deposition are to the copy of the deposition attached to the December 21, 2005 Supplemental Declaration of David Wilson.

ceived a letter from the VA's general counsel refusing to provide any information.

Godfrey explains that she was concerned that the VA was unwilling to provide a statement that plaintiff could work safely while using the medications prescribed by the VA. Godfrey Declr. at ¶ 12. Because of those concerns, defendant placed plaintiff on administrative leave in January 2003 to eliminate any potential dangers on the worksite while defendant collected the information needed to determine whether plaintiff could work safely. *Id.* Plaintiff received the same pay and benefits as he did while working.

Unable to obtain an opinion from the VA, Godfrey discussed with plaintiff the possibility of obtaining another clarifying opinion from Dr. Antoniskis or referring him to a new specialist. Plaintiff chose to see Dr. Antoniskis again, although plaintiff characterizes his decision to do so as acquiescing to defendant's demand.

Dr. Antoniskis examined plaintiff a second time on February 12, 2003. At this time, he had also received VA medical records. He provided two letter reports, one consisting of handwritten responses, dated February 12, 2003, to questions posed by defendant in a February 5, 2003 letter. Exh. F to Godfrey Declr. The other is a typewritten letter to Godfrey dated February 12, 2003. Exh. G to Godfrey Declr.

In the handwritten answers to defendant's questions, Dr. Antoniskis stated that it appeared plaintiff was currently able to safely perform all of the duties of his position because he has been at the job for years while taking these medications and had no problem. Exh. F to Godfrey Declr. at p. 2. Thus, he opined, there was not a "significant" risk, but there was a potential one. *Id.* He further opined that because of plaintiff's tolerance to the medications, and his performance of the job for

years without a problem, the current medication regime did not create a direct threat of harm, but nonetheless, plaintiff should not drive or operate machinery. *Id.* He also stated that plaintiff's job duties of climbing ladders or stairs increased the risk of falls as a result of his medication use. *Id.* at p. 3.

In his February 12, 2003 typewritten report, Dr. Antoniskis noted that plaintiff's situation was "complicated" because, on the one hand, plaintiff likely had a "degree of tolerance" to the medications given his years of using them, but on the other hand, all the medications at issue raised concerns for the performance of potentially hazardous tasks such as driving a motor vehicle or operating machinery as a result of the possible impairment of mental or physical abilities. *Id.* at pp. 2–3. Dr. Antoniskis opined that the liability risk was difficult to ascertain. *Id.*

Defendant states that Dr. Antoniskis's February 2003 opinions raised serious concerns without giving clear answers and thus, it decided another opinion was needed. It arranged for plaintiff to see Dr. Brent Burton, a specialist in medical toxicology and occupational medicine.

Dr. Burton examined plaintiff sometime between February 12, 2003, and April 2, 2003. In his April 2, 2003 report, Dr. Burton reviewed plaintiff's subjective history in some detail, including his occupational history and past medical history, and also reviewed his family and social history. Exh. I to Godfrey Declr. at pp. 1–6. Dr. Burton then reviewed plaintiff's VA medical records from 1991. *Id.* at pp. 6–10. He also reviewed plaintiff's job description. *Id.* at p. 10.

Dr. Burton opined that it was "inappropriate to place Mr. Dvorak into any safety-sensitive position.... Mr. Dvorak should not be allowed to operate machinery, drive a commercial vehicle, work on ladders or

at heights or otherwise engage in activities that might place others at risk." *Id.* at p. 13. He further opined that plaintiff was not a candidate for medical marijuana and that plaintiff's increasing use of narcotic analgesics placed him at risk during the performance of any safety-sensitive job. *Id.* at pp. 14–5. He explained that plaintiff's "impaired faculties [while taking the narcotic medication,] undoubtedly present unacceptable risk." *Id.*

Based on Dr. Burton's opinions, Godfrey scheduled a July 9, 2003 meeting with plaintiff and Greg Baxter, his union representative. Defendant states that the purpose of the meeting was to explore options for returning plaintiff to work in a safe manner. Plaintiff states that it was to demand that he enter a specific drug rehabilitation program and sign an agreement to do so. Defendant states that during this meeting, it suggested a treatment program along the lines recommended by Dr. Burton. Defendant further states that neither plaintiff, nor Baxter proposed any other alternatives.

On August 5, 2003, plaintiff met with Michael Hollen, the manager of a drug rehabilitation program associated with Providence Hospital. Plaintiff does not dispute that he was told that the program was designed to get plaintiff on some other type of pain management. Plaintiff refused to enter the program because he believed it was something that he had already tried unsuccessfully.

After plaintiff refused to enter the program, defendant notified him that it was considering terminating his employment. Defendant invited plaintiff to a due process meeting to respond to defendant's concerns. The meeting occurred on August 21, 2003. After the meeting, defendant let plaintiff know that his employment would be terminated, but that he could avoid termination by agreeing to enter the Providence program within one week. Plaintiff

chose to let his employment end instead of entering the Providence program.

### STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.' " *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving

party. *T.W. Elec. Serv.*, 809 F.2d at 630–31.

■ If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agricultural Research and Tech. Group*, 916 F.2d 528, 534 (9th Cir. 1990); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987).

## DISCUSSION

Plaintiff brings claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796*l*, and Oregon law. In support of his ADA claim, plaintiff alleges that he was able to perform the essential functions of his position with reasonable accommodation. Compl. at ¶ 22. He contends that defendant terminated him in substantial motivating part because of his disability, defendant's perception that he was disabled, and/or because of his record of disability. *Id.* at ¶ 23. He further alleges that defendant imposed an unreasonable condition of employment that plaintiff enter a drug treatment program and declined plaintiff's reasonable accommodation that he take prescription medication while not at work. *Id.* at ¶ 24.

In support of his claim under Oregon Revised Statute § (O.R.S.) 659A.112, plaintiff incorporates the prior allegations and further alleges that defendant's alleged failure to accommodate him or enter into an interactive process in response to his requests for accommodation, constitutes discrimination under Oregon law. *Id.* at ¶ 31.

The Rehabilitation Act claim incorporates the allegations raised in support of the ADA claim, and further alleges that defendant is a direct recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act. *Id.* at ¶ 34.

For relief, plaintiff seeks (1) a declaration that defendant is in violation of the ADA, the Rehabilitation Act, and state law; (2) a permanent injunction enjoining defendant from engaging in employment practices which violate rights under the ADA and the Rehabilitation Act; (3) economic damages; (4) noneconomic damages; and (5) attorney's fees and costs.

Defendant contends that it is entitled to summary judgment for the following reasons: (1) plaintiff is not disabled; (2) defendant had no knowledge of any disability; (3) plaintiff posed a "direct threat"; (4) defendant satisfied any duty it had to reasonably accommodate plaintiff's alleged disability; (5) plaintiff cannot sustain his "perception/regarded as" or "record of" claims; (6) plaintiff's Rehabilitation Act claims fail for the same reason(s) as his ADA claim; and (7) plaintiff's Oregon claim fails for the same reason(s) as his ADA claims.

Because I agree with defendant that plaintiff fails to create an issue of fact on the issue of whether he is disabled under the ADA, under any of the three prongs defined by the ADA as constituting a disability, I do not consider any other arguments as to the ADA claim. I further agree with defendant that plaintiff fails to create an issue of fact as to his Rehabilitation Act or state law disability claims.

## I.  ADA Claim—Disability

■ To prevail on a disability discrimination claim under the ADA, plaintiff must initially establish that he is a qualified individual with a disability. *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir.2001). Under the ADA, an individual is disabled if that individual (1) has a physical or mental impairment that

substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded or perceived as having such an impairment. 42 U.S.C. § 12102(2); *Deppe v. United Airlines,* 217 F.3d 1262, 1265 (9th Cir.2000).

■ "Whether a person is disabled under the ADA is an 'individualized inquiry.'" *Thornton v. McClatchy Newspapers, Inc.,* 261 F.3d 789, 794 (9th Cir.2001) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). In *Sutton,* the Supreme Court clarified that "'substantially' suggests considerable or specified to a large degree." *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139.

Under the pertinent regulation, "substantially limits" means:

(1) Unable to perform a major life activity that the average person in the general population can perform; or

(2) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "Affecting" a major life activity is not enough; there must be a substantial limitation. *See Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 565, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (Ninth Circuit erred when it transformed "significant restriction" into a "mere difference"); *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir. 1997) ("It is not enough that an impairment affect a major life activity; the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially or materially limited").

The following factors are to be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

**A. Actual Disability**

Plaintiff contends that he is substantially limited in the major life activities of walking, lifting, self-care, and working.

**1. Walking**

■ It is undisputed that plaintiff had surgery on his left knee in 1980, 1983, and 1992, and wears a knee brace. In his deposition, however, plaintiff stated that he was always able to physically do his job with defendant, that the job involved walking, and that he was able to do whatever walking he had to do. Pltf Depo. at p. 134. Plaintiff also testified that he had no problem keeping his balance and no problems with falling down. *Id.* at pp. 134–35. He never sought treatment at the VA for any kind of walking problem. *Id.* His VA medical records state, as of July 1999, that

[h]is gait is normal, both casual, heel and toe. He has no trouble on tandem walking. I performed the EPS exam including rapid alternating movements and a gait examination, and it shows no difficulties.

Exh. B to Wilson Declr. at pp. 42–43.

Dr. Thomas, who is plaintiff's treating physician for his knee problems, has never limited plaintiff's ability to walk, other than to leave the amount of walking up to plaintiff's discretion. Pltf Depo. at p. 135;

*see also* Exh. A to Wilson Declr. (Dr. Thomas medical records).

Dr. Burton noted in his April 2, 2003 opinion that although plaintiff wore a brace on his left knee, plaintiff did not express any symptoms regarding knee pain and that plaintiff told him that he wore the brace because his physician told him to do so. Exh. C to Wilson Declr. at p. 86. Dr. Burton also found plaintiff's gait to be normal upon physical examination. *Id.* at p. 87.

Defendant contends that based on this evidence, plaintiff cannot show that he was substantially limited in the major life activity of walking. Defendant notes that plaintiff is able to walk, has no restrictions on walking or history of any such restrictions, and he was able to perform all walking required in his job. Defendant contends that at most, the evidence indicates that plaintiff has some difficulty in his ability to walk, but that this falls short of a substantial limitation.

In response, plaintiff states in his declaration that he suffers from "chronic instability of the left knee[.]" Pltf Declr. at ¶ 1. He further states that "[a]lthough I can walk, doing so causes an increase in my pain." *Id.* at ¶ 5. He then states that

> I injured my left knee off the job in 1979. It has been reconstructed three times due to anterior cruciate ligament and other internal damage. I use a knee brace at all times because my knee is not stable without it. If I don't use it, my knee gives out and I am unable to walk. I cannot keep from hyperextending my knee without the brace; nor can I maintain lateral stability. When my knee goes out on me, I suffer extreme pain for extended periods.
>
> I have trouble walking on uneven surfaces by losing my balance, and after walking on uneven surfaces my back and neck pain increases significantly, contributing to the severe limitations I ex-

perience when my pain level goes up tremendously. I can squat and stoop, but when I do I have difficulty getting back up to a standing position. Squatting and stooping also increase my pain in a similar manner as walking on uneven surfaces.

Pltf Declr. at ¶¶ 7, 8.

Plaintiff also relies on a July 2004 letter written by a VA vocational rehabilitation counselor which addressed plaintiff's vocational outlook. Exh. C to Pltf Declr. The counselor stated that "[t]he veteran has had a left knee reconstruction. The residuals of this condition limit his ability to engage in prolonged standing and walking, heaving lifting and carrying, crouching, crawling and climbing." *Id.* at p. 2.

Plaintiff further relies on an August 2005 opinion letter from VA physician Dr. Thomas Cooney in which Dr. Cooney stated that he had reviewed plaintiff's chart and was familiar with plaintiff's history and issues related to his chronic headaches. Exh. B to Pltf Declr. at p. 6. He noted that plaintiff was working full-time until approximately two years ago when he was terminated due to his use of opiods for his chronic headaches, and that he had been unable to find employment since that time. *Id.* He further stated that

> [plaintiff's] medical problems do not preclude the ability to work in any capacity, as evidenced by his gainful employment until 2+ years ago. Rather, his medical treatment, associated medical history and current skill set have rendered him unemployable, largely due to employer's [sic] unwillingness to hire him. Hence we have a paradox: he could work, but no one will hire him with the limitations he has to perform work for which he is currently qualified by education and experience.

*Id.*

I conclude that plaintiff fails to create a material issue of fact regarding a substan-

tial impairment in the major life activity of walking, both because the evidence itself falls short and because, at least under federal law, I consider the alleged limitation as it exists with corrective devices, such as plaintiff's knee brace.

First, as to the evidence itself. The VA vocational rehabilitation counselor's opinion does not create an issue of fact as to plaintiff's substantial limitation in his ability to walk. Although the counselor opines that plaintiff is limited in his abilities to engage in prolonged standing and walking, heavy lifting and carrying, crouching, crawling, and climbing, she does not state that he is substantially limited in these abilities.

Moreover, her opinion was rendered in July 2004, approximately eleven months after plaintiff's employment was terminated. Her opinion is phrased in the present tense and it is clear that her assessment is of plaintiff's condition at that time. She renders no opinion of plaintiff's status at the time of termination. If there was no reason to believe that plaintiff's condition changed from the time of termination until July 2004, the vocational rehabilitation counselor's opinion would be relevant.

However, as defendant notes, plaintiff testified in his deposition that at the time his employment ended in August 2003, he was still able to work, but that he then became unable to work, even with his medications, in 2004. Pltf Depo. at pp. 117–18. Given this admission by plaintiff that his condition deteriorated after his employment terminated, to the point where he could no longer work at all, even with his medications, the vocational rehabilitation counselor's assessment of plaintiff's condition as of July 2004 is not relevant to his limitations as they may have existed in August 2003, the time of termination.

Next, for the same reason, Dr. Cooney's opinion, dated August 2005, is not relevant to a determination of plaintiff's limitations as of August 2003. And, while he offers an opinion about plaintiff's apparent "paradox," he makes no reference to any limitations in plaintiff's ability or inability to walk.

As to plaintiff's declaration, the description of his symptoms and limitations is, like the VA vocational rehabilitation counselor's July 2004 letter, phrased in the present tense, that is, as of the date of the November 2005 declaration. While plaintiff mentions certain historical incidents regarding his injuries, his recitation of symptoms and functional ability is not described as of the time of his termination with defendant, but is stated in the present tense. Because of the admitted decline in plaintiff's condition and functional limitations since his termination, any testimony regarding his condition and limitations as of any later date, is not relevant.

Alternatively, even if the statements in the declaration regarding the alleged limitation in walking are credited, they do not amount to a substantial limitation in walking. Relevant cases from other jurisdictions indicate that while plaintiff may indeed have difficulty walking, his impairment does not rise to the required level of being a substantial impairment in the major life activity of walking.

In *Vass v. Riester & Thesmacher Co.*, 79 F.Supp.2d 853 (N.D.Ohio 2000), the court, in resolving the employer's motion for summary judgment, described the plaintiff's allegations and explained its reasoning as follows:

> Mr. Vass claims he has a physical impairment which substantially limits him in a number of major life activities. Specifically, he states his ability to walk is substantially limited. He often loses his balance and wears a knee brace. Walking up and down stairs is painful and elicits a popping noise from his knee. Because of his condition, he

mainly stays on the first floor of his split level home. He has trouble with repetitive bending, has discomfort with kneeling or squatting and is only able to stand for approximately 30 minutes [sic] intervals before experiencing discomfort.... He further notes his doctor has restricted him from carrying weights of more than twenty-five pounds, ..., and he suggests he is substantially limited in his ability to work because he cannot operate a mechanical press brake.

These facts suggest Mr. Vass has physical limitations, but they do not cause him to fall within the narrow definition of "disabled" set forth in the ADA regulations or in the courts' interpretation of them. He can, for instance, walk without a wheelchair or a cane, using only a knee brace while at work.... He can negotiate the eight stairs in his split-level home without assistance. He works outside in his garden and performs the family's yardwork on his own.... He can still lift objects under twenty-five pounds.

*Id.* at 860–61 (citations, internal quotation, and ellipses omitted); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (employee who could not jog, had trouble climbing stairs, and could not walk more than a mile was not substantially limited in walking under the ADA); *Puoci v. City of Chicago*, 81 F.Supp.2d 893, 896–97 (N.D.Ill.2000) (employee who walked with a limp, experienced numbness in legs, and could not walk more than one and one-half miles without pain was not substantially limited in ability to walk under the ADA).

Second, in *Sutton*, the Supreme Court held that the existence of a disability is determined in light of mitigating or corrective measures. *Sutton*, 527 U.S. at 482–83, 493–94, 119 S.Ct. 2139. Thus, here, at least as to the federal ADA claim [3], I must

consider the level of impairment in light of plaintiff's use of a knee brace. His own declaration statements indicate that his problems occur *without* the knee brace:

> I use a knee brace at all times because my knee is not stable without it. If I don't use it, my knee gives out and I am unable to walk. I cannot keep from hyperextending my knee without the brace; nor can I maintain lateral stability. When my knee goes out on me,

I suffer extreme pain for extended periods. Pltf Declr. at ¶ 7. The clear impact of this evidence is that if plaintiff uses his brace, his knee is stable and not subject to hyperextension or giving out.

In summary, even without considering the corrective measure of the knee brace, plaintiff fails to create a material issue of fact on the issue of a substantial limitation in the major life activity of walking. Plaintiff establishes that he has some limitations in walking, but he fails on the question of a substantial limitation. As other courts have noted, a limitation, without more, is not enough. Consideration of the knee brace only strengthens this conclusion because using it appears to reduce or eliminate the limitations plaintiff describes.

### 2. Lifting

■ At least one court has concluded that lifting is a major life activity. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 21 (1st Cir.2002). For the purposes of this decision, I assume that lifting is a major life activity under the ADA.

In deposition, plaintiff stated that he had no medical limitations on his ability to lift and that no doctor had ever told defendant that plaintiff's lifting was limited in any way. Pltf Depo. at p. 138. None of his medical records contain any limitation

**3.** Plaintiff's Oregon claim is discussed in a    separate section.

on his ability to lift. Exhs. A, B, C to Wilson Declr. Plaintiff conceded that his job involved lifting and that he was able to do all of the lifting the job required. Pltf Depo. at p. 138. The lifting at work included ninety-pound trash grates that plaintiff and his partner lifted together. *Id.* at pp. 138–39. He did state that lifting hurt his neck. *Id.* at p. 138.

In his declaration, plaintiff states that due to his severe neck pain, which limits "all my motion," he can "perform functions required of me, [but] when I do so I pay for it by debilitating pain following lifting, carrying, or repetitive movements or any jostling of my head." Pltf Declr. at ¶ 4. He further states that he "cannot lift or carry anything above my shoulders due to the pain it causes at the time, and if I were to do it I would ·suffer increased migraine headaches (which I have experienced when I have tried to use my neck.)." *Id.* at ¶ 9.

In addition to the statements in his declaration, plaintiff also relies on the July 2004 letter by the VA vocational rehabilitation counselor who states that plaintiff "cannot lift and carry objects over the shoulder level[.]" Exh. C to Pltf Declr.

Plaintiff's evidence fails to create an issue of fact regarding a substantial limitation in the major life activity of lifting. For the reasons articulated above, the VA vocational rehabilitation counselor's July 2004 opinion about plaintiff's abilities and limitations in July 2004 is not relevant given plaintiff's admitted decline in condition following his termination in August 2003. And, for the reasons discussed above, plaintiff's own declaration statements are not entitled to any weight given that they address his condition as of November 2005, more than two years after his termination and after the admitted decline in his condition.

Additionally, even if plaintiff's declaration statements are accepted, the limitations he describes are not disabling within the meaning of the ADA because they are not substantially limiting. *E.g., Thompson v. Holy Family Hosp.,* 121 F.3d 537, 540 (9th Cir.1997) (twenty-five pound lifting restriction is not a substantial limitation on ability to lift); *see also Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 & n. 11 (5th Cir.1995) (affirming district court's grant of summary judgment to defendant on issue of substantial limitation on lifting when plaintiff was limited in heavy lifting, repetitive rotational movements, picking things up off the floor, and in holding things up high or tight); *Gordon v. MCG Health, Inc.,* 301 F.Supp.2d 1333, 1340–41 (S.D.Ga. 2003) (finding nurse not disabled when she was restricted from lifting more than ten pounds, engaging in repetitive bending, stooping, squatting, and overhead or shoulder-level work).

I recommend concluding that plaintiff fails to create an issue of fact regarding a substantial limitation in the major life activity of lifting.

### 3. Self–Care

■ In his administrative complaint to the Bureau of Labor & Industries (BOLI), plaintiff did not identify self-care as a major life activity substantially limited by an impairment. He also did not identify it in the Complaint filed in this Court. Defendant contends that plaintiff's failures to assert self-care in his BOLI Complaint or his court Complaint preclude him from raising it in response to defendant's motion for summary judgment. I need not resolve this issue because I conclude that even if self-care were properly raised, plaintiff fails to create an issue of fact regarding a substantial limitation in the major life activity of self-care.

In deposition, plaintiff testified that he can perform all "around the house" activities such as eating, bathing, grooming, toileting, and dressing, although some of

these activities can become increasingly tough if they involve repetitive movement with his upper arms. Pltf Depo. at p. 139. He can sleep most of the time. *Id.* He has no trouble breathing. *Id.* at p. 140. He is able to mow his lawn and care for his five-year old daughter by himself. *Id.* at 140–41.

In his declaration, plaintiff states:

I have severe pain in my neck that limits all my motion, and it turns into headaches such that I have to just go to bed. The headaches keep me from participating in family activities and anything else that requires any kind of physical exertion. Occasionally, I get numbness down my entire right arm. Although I can perform functions required of me, when I do I so I pay for it by debilitating pain following lifting, carrying, or repetitive movements or any jostling of my head.

... I can engage in daily self care activities, such as eating, bathing, grooming, toileting, and dressing, but doing so also causes an increase in pain, such that I often can do no more than just go to bed.

... I have migraine headaches virtually every day. When those headaches come, I must find a dark room, lie down, and shut the door. On those occasions, I am unable to interact with my family or engage in other activities.

Pltf Declr. at ¶¶ 4, 5, 6.

For the reasons previously discussed, plaintiff's declaration fails to create an issue of fact regarding self-care because it describes his limitations as of November 2005, not as of the time of termination. Alternatively, as with the major life activities of walking and lifting, even accepting his statements, they do not show a substantial limitation in his ability to care for himself. While plaintiff describes pain affecting his ability to interact with his family or engage in other activities, he also attests that he can nonetheless engage in daily self-care activities such as eating, bathing, grooming, toileting, and dressing. Therefore, I recommend concluding that plaintiff fails to create an issue of fact regarding a substantial limitation in the major life activity of self-care.

4. Working

■ Although the EEOC regulations define working as a major life activity, 29 C.F.R. § 1630.2(i), the Supreme Court has left the question open. *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139 (assuming without deciding that working is a major life activity and noting certain conceptual difficulties in defining "major life activities" to include work).

The Court did opine however, that assuming working is a major life activity, being substantially limited in that activity means being substantially limited in the performance of a broad class of jobs, not just the plaintiff's job. *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. An "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Thornton,* 261 F.3d at 795; *see also Sutton,* 527 U.S. at 492, 119 S.Ct. 2139 ("[t]o be substantially limited in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice.").

In support of his argument that he is substantially limited in the major life activity of working, plaintiff principally relies on the VA vocational rehabilitation counselor's report, and his declaration. For the reasons discussed above, neither the report nor the declaration create a material issue of fact regarding plaintiff's limitation in his ability to work because neither address his limitations at the time of his termination. Moreover, Dr. Cooney's August 2005 letter, describing plaintiff's "par-

adox," expressly states that "[plaintiff's] medical problems do not preclude the ability to work in any capacity." Exh. B to Pltf Declr. at p. 6.

In addition, plaintiff concedes that at the time of his termination, he was still capable of performing his job. Pltf Depo. at pp. 124–26. Thus, at that relevant time, his impairment(s) did not create a substantial limitation in his ability to work. *E.g., Mahon v. Crowell,* 295 F.3d 585, 591–92 (6th Cir.2002) (plaintiff who claimed that he was qualified for his job as a steamfitter was not substantially limited in working); *Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 23 (1st Cir.2001) (plaintiff's asthma and lymphoma did not substantially limit the major life activity of working where plaintiff admitted he could perform all of his tasks without assistance); *Standard v. ABEL Servs., Inc.,* 161 F.3d 1318, 1327 (11th Cir.1998) (plaintiff who admitted that he could do his job was not substantially limited in working).

I recommend concluding that plaintiff has failed to create an issue of fact regarding a substantial limitation in the major life activity of working.

Because plaintiff fails to create an issue of fact regarding a substantial limitation in any major life activity at the time of termination, I recommend that defendant's motion as to plaintiff's "actual disability" claim be granted.

### B. Regarded/Perceived Disability

As noted above, under the ADA, an individual is disabled if that individual has a physical impairment that substantially limits one or more of the individual's major life activities (an actual disability), or has a record of such impairment, or is regarded or perceived as having such an impairment. 42 U.S.C. § 12102(2); *Deppe,* 217 F.3d at 1265.

A person is regarded as being disabled if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139; *see also* 29 C.F.R. § 1630.2(*l*) (defining "regarded as"); *Deppe,* 217 F.3d at 1265 ("In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA."). Thus, plaintiff needs to show that defendant believed that plaintiff was substantially limited in one or more major life activities, through either the mistaken belief that plaintiff had an impairment causing such a limitation or the mistaken belief that an impairment which was not so limiting, caused such a limitation.

As with the self-care issue discussed above, defendant first contends that plaintiff's "regarded as" claim fails because plaintiff did not raise such a claim in his BOLI Complaint. Again, I need not resolve that issue because even if it were properly raised in the administrative complaint, I conclude that plaintiff fails to create an issue of fact as to his "regarded as" claim.

Defendant notes that in deposition, plaintiff expressly stated that he had no reason to believe that either Godfrey or Nolan, or anyone else in defendant's management, wanted his employment to end because he or she thought plaintiff was disabled. Pltf Depo. at pp. 148–51. Defendant argues that this concession is a sufficient basis upon which to grant defendant's motion on the "regarded as" claim.

In response to defendant's motion, plaintiff makes two arguments. First, plaintiff argues that Godfrey considered him to "disabled from a broad range of occupa-

tions." Pltf Mem. at p. 11. Although not expressly presented as such, I understand plaintiff's argument to be that defendant regarded him as substantially limited in the major life activity of working.

Second, plaintiff asserts that defendant regarded him as disabled because it "over-focused" on his intended use of marijuana and concluded that plaintiff was a drug user or had a drug problem.

As to the first argument, plaintiff must show not only that defendant thought that he was impaired in his ability to do the job that he held, but also that the employer regarded him as substantially impaired in "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." *Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d 110, 117 (1st Cir.2004) (citing *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999)).

In support of his position, plaintiff alleges that during a discussion about plaintiff's ability to work in a van with the sewer television crew, monitoring sewer and storm lines with a television camera, Godfrey stated "I won't even put you behind a computer." Pltf Declr. at ¶ 20. Although Godfrey denies making the comment or any words to that effect, Godfrey Declr. at ¶ 7, for the purposes of this motion I assume that she did.

Plaintiff contends that Godfrey's comment shows that she considered him to be unfit "for even the most sedentary positions within defendant." Pltf Mem. at p. 11. Thus, plaintiff argues that Godfrey concluded that plaintiff was disabled from performing a broad range of occupations.

I disagree. Godfrey's alleged comment is best understood as suggesting that she considered plaintiff unfit for computer jobs. At such, her comment shows she perceived plaintiff as limited in one subset of one type of job (computer jobs as a subset of sedentary jobs). This is not a perception of a substantial limitation in the performance of a broad class of jobs.

Even if her comment is taken to mean, as plaintiff suggests, that Godfrey believed that plaintiff was disabled from all sedentary jobs with defendant, that is not enough. Plaintiff does not contend that Godfrey thought plaintiff unable to perform all sedentary jobs in the national or regional economy, or that Godfrey thought plaintiff unable to perform any job with defendant. Rather, the assertion is that Godfrey believed plaintiff to be disabled from performing sedentary jobs with defendant.

As Magistrate Judge Stewart noted in a recent decision, when proving an actual disability claim in the Ninth Circuit, "'a plaintiff must present specific evidence about relevant lost labor markets to defeat summary judgment on a claim of substantial limitation of "working."'" *Walz v. Marquis Corp.*, No. CV–03–1468–ST, 2005 WL 758253, at *11 (D.Or. Apr.4, 2005) (quoting *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 795 (9th Cir. 2001)). Judge Stewart applied this same evidentiary showing in a "regarded as" claim. *Id.*

She concluded that the plaintiff had failed to create a genuine issue of material fact as to whether his employer had regarded him as substantially limited in working in a class or broad range of jobs because the plaintiff failed to present evidence about the various types of jobs in the relevant labor market from which he would be restricted if, as he alleged, the employer perceived him as unable to use power tools. *Id.* at *12. Judge Stewart noted that the record showed only that the defendant saw the plaintiff as unfit to perform safety-sensitive jobs in its facility. *Id.* Because the plaintiff presented no evi-

dence that the category of jobs the defendant regarded the plaintiff as unable to perform at its facility was "roughly equivalent to a class or broad range of manufacturing jobs that represent a significant portion of the jobs locally available to [the plaintiff], given his training, knowledge, and abilities[,]" the plaintiff did not show that the employer perceived him to be unfit to perform a broad class of jobs. *Id.*

Similarly, in a District of Connecticut case, the court found that an alleged perception by the employer that the plaintiff could not perform any position with the employer with a certain physical demand rating, was not sufficient to establish a perception of a substantial limitation in the major life activity of working. *Beason v. United Techs. Corp.*, 213 F.Supp.2d 103, 112–14 (D.Conn.2002), *aff'd*, 337 F.3d 271 (2d Cir.2003). Without more, the employee did not show that the employer perceived him to be limited in "a wide range of employment options within the employee's field." *Id.* at 113 (internal quotation omitted). Because the employee did not present "sufficient evidence that the defendant perceived [the employee's] impairment to substantially limit his ability to perform a number of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area to which he has reasonable access," and presented no evidence of "the general employment demographics and/or of recognized occupational classifications to indicate that he was perceived as precluded from performing a broad range or class of jobs in the geographic area to which he had access and which required similar abilities and qualifications[,]" the court granted summary judgment to the employer on the plaintiff's "regarded as" claim. *Id.* at 114–15 (internal quotation and brackets omitted).

As in *Beason* and in *Walz*, plaintiff here simply relies on his assertion that Godfrey perceived him as unfit to perform sedentary jobs with defendant. He presents no evidence as to the relevant labor market in the relevant geographic area. He presents no evidence regarding jobs with similar training, knowledge, or skills, or evidence of employment demographics and occupational classifications. Thus, he fails to create a genuine issue of fact as to defendant's perception that he was substantially limited in the major life activity of working.

Plaintiff's alternative argument regarding defendant's perception of plaintiff being a drug user or having a drug problem, is also unavailing. Even if plaintiff accurately describes defendant as being "overfocused" on his intended use of medical marijuana and thus perceived him as possessing a drug problem, this does not, without more, create an issue of fact as to whether defendant perceived plaintiff as being substantially limited in the performance of a broad class of jobs and thus, substantially limited in the major life activity of working. Plaintiff's assertion in this regard also, by itself, does not show that defendant perceived plaintiff to be substantially limited in any other major life activity on which plaintiff relies. Thus, I recommend concluding that plaintiff fails to create a material issue of fact as to his "regarded as" claim. I further recommend that defendant's motion as to this claim be granted.

## C. Record of Disability

To have a record of an impairment that substantially limits a major life activity means to have "a history of, or [have] been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see also Heisler v. Metropolitan Council*, 339 F.3d 622, 630 (8th Cir.2003) ("[T]he record must be of an

impairment that substantially limits a major life activity.").

Defendant first argues that because, prior to the initiation of litigation, it had no medical records of plaintiff's, it cannot have terminated plaintiff because of a record of disability. Relevant EEOC comments eliminate this argument. At the time the EEOC adopted rules for interpretation of the ADA, it provided explanations for certain rules in the Federal Register. In explaining 29 C.F.R. Part 1630, and in particular 29 C.F.R. § 1630.2(k), the EEOC stated, in relevant part, that "[t]here are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records." 56 Fed. Reg. 35726, 35742 (1991) (found at 1991 WL 304269). That defendant had no actual medical records does not, in and of itself, entitle defendant to summary judgment on plaintiff's "record of" claim.

■ As defendant notes, a record of an impairment is not a record of a disability unless the record shows that the impairment substantially limits a major life activity. *E.g., Dupre v. Charter Behavioral Health Sys. of Lafayette,* 242 F.3d 610, 615 (5th Cir.2001) ("not only must Dupre demonstrate that she has a record of an injury or impairment, but the evidence must show that her impairment limited a major life activity.... The screening form made only vague mention of the existence and treatment of Dupre's back problem and did not indicate whether or how this problem substantially limited any major life activity.... Dupre did not have a record of a disability within the meaning of 42 U.S.C. § 12102(2)(B).") (citations omitted).

■ I agree with defendant that no record of any kind available to defendant prior to its termination decision showed that plaintiff was ever disabled within the meaning of the statute because no record suggests that plaintiff was substantially limited in any major life activity. While the records indicate that plaintiff had certain knee and neck impairments for which he required narcotic pain medication, they do not indicate that those impairments caused a substantial limitation in any major life activity. I recommend concluding that plaintiff fails to create a material issue of fact regarding defendant terminating him because of a "record of disability." I further recommend that defendant's motion on this claim be granted.

Because I conclude that plaintiff fails to create an issue of fact on his actual disability, regarded as, and record of claims, I recommend that all of his ADA claims be dismissed. As noted earlier, plaintiff must first establish that he is a qualified individual with a disability to prevail on an unlawful discharge claim under the ADA. *Humphrey,* 239 F.3d at 1133. This is also required of plaintiff to prevail on an ADA reasonable accommodation claim. *See* 42 U.S.C. § 12112(b)(5)(A) (employers have duty to provide reasonable accommodation to an otherwise qualified individual with a disability); *see also Morton v. United Parcel Serv.,* 272 F.3d 1249, 1261 (9th Cir. 2001) (threshold requirement in ADA claims it that the employee is a qualified individual with a disability).

## II. Rehabilitation Act and Oregon Claims

### A. Rehabilitation Act Claim

Constructions of the ADA that limit its definition of "disability" apply with equal force to the Rehabilitation Act and the standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the ADA. *See* 42 U.S.C. § 12201(a) ("Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. § 790

et seq.) or the regulations issued by Federal agencies pursuant to such title"); 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [the ADA]"); *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 193–94, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (noting that "Congress drew the ADA's definition of disability almost verbatim from the definition of 'handicapped individual' in the Rehabilitation Act"); *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir.2000) ("In determining whether a federal agency has violated the Rehabilitation Act, the standards under [the ADA] apply.").

Given my conclusion regarding plaintiff's ADA claims, I recommend that defendant's motion as to the Rehabilitation Act claim be granted.

B.   Oregon Claim

Generally, claims under Oregon's disability discrimination statutes are subject to the same analysis as that used in ADA claims. *E.g., Spicer v. Cascade Health Servs., Inc.,* No. CV–03–6377–TC, 2005 WL 2211097, at *5 (D.Or. Sept. 9.2005) ("Oregon laws on disability discrimination are to be construed in a manner consistent with the federal ADA.").

Plaintiff correctly notes, however, that the Oregon Court of Appeals, in a case issued in 2005, held that the Oregon statute's definition of "disability" does not take into account mitigating or corrective measures, contrary to what *Sutton* held for the ADA. *Washburn v. Columbia Forest Prdts.*, 197 Or.App. 104, 110–11, 104 P.3d 609, 613, *rev. allowed*, 339 Or. 156, 119 P.3d 224 (2005). Thus, to the extent any of my conclusions regarding plaintiff's allegations of substantial limitations in a major life activity are based on plaintiff's use of corrective or mitigating measures, they may not control the outcome of plaintiff's Oregon claim.

While I agree with plaintiff regarding the current state of Oregon law as interpreted by the Oregon Court of Appeals, my reliance on *Sutton*'s holding regarding mitigating or corrective measures is limited only to the knee brace in the context of plaintiff's alleged walking limitation. More importantly, as explained in my discussion of that issue, I clearly considered this corrective measure only an alternative basis for rejecting plaintiff's arguments, and only after concluding without regard to the corrective measure, that plaintiff had failed to create an issue of fact in regard to a substantial limitation in the major life activity of walking.

Because plaintiff's evidence fails, in the first instance, to create a material issue of fact regarding a substantial limitation in the major life activities of walking, lifting, self-care, or working, even without considering any corrective measures, my analysis and conclusion regarding plaintiff's ADA claim equally applies to plaintiff's claim based on Oregon law. Thus, I recommend that defendant's motion as to plaintiff's Oregon law claim be granted.

CONCLUSION

I recommend that defendant's motion for summary judgment (# 22) be granted.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 4, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due April 18, 2006, and the

review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

March 20, 2006.